CONSTANCE G. MAHONEY, Temporary Administrator of the Estate of ROY PATRICK MAHONEY, Deceased; CONSTANCE G. MAHONEY, individually; KATHERINE KIEL; DAVID MAHONEY; and MICHAEL MAHONEY, Plaintiffs-Appellants, *v.* JAMES E. MITCHELL, M.D., Defendant-Appellee, and HAWAIIAN AIRLINES, INC., and STATE OF HAWAII, Defendants

APPEAL NO. 8841

(CIVIL NO. 50304)

JULY 27, 1983

BURNS, C.J., HEEN AND TANAKA, JJ.

OPINION OF THE COURT BY BURNS, C.J.

In this medical malpractice case tried by a jury, plaintiffs appeal the judgment in favor of defendant Dr. James E. Mitchell.

The questions before us are:

1. May plaintiffs complain about the trial judge's refusal to suppress the testimony of defendant's witness when the testimony sought to be suppressed is not introduced at trial?

2. Did the trial judge's comments during the trial to plaintiffs' counsel in the jury's presence deny plaintiffs a fair trial?

3. Did the trial judge err in not giving various instructions requested by plaintiffs?

4. Did the jury use faulty procedure in arriving at a verdict?

We answer no to all questions and affirm.

On August 24, 1976, Mr. Mahoney, age 54, suffered a cerebral vascular accident and arrived at Kona Hospital at 7:10 a.m. with a right-sided headache and left hemiplegia. His vital signs and blood pressure were normal. At that time, the equipment to obtain a computerized axial tomograph (CAT scan), an electroencephalogram (EEG), and a cerebral angiogram was available in Honolulu but not in Kona. Mrs. Mahoney and two of the three Mahoney children, David and Kathy, each testified that they had asked Mr. Mahoney's physician, Dr. Mitchell, to send Mr. Mahoney to Honolulu rather than keep him in Kona Hospital. Since he was not sure of the cause of the stroke, Dr. Mitchell decided to keep Mr. Mahoney in Kona Hospital "to observe him, hope that he would stabilize and then possibly send him for definitive treatment."

At the trial, Dr. Mitchell responded to a question as follows:

Q   Would you agree that it would have been in Mr. Mahoney's better interest if he had been sent immediately to Honolulu so that if in fact he did survive he would have definitive treatment available to him at all times?

A   No. I believe not because I think stress of putting him on the ambulance, take him down to the airport, putting him on the airplane, send him up to a pressurized level of 7000 feet and then down again and by ambulance by Queen's, I think it would have done more harm than good

in his particular initial stroke.

During Mr. Mahoney's stay at Kona Hospital, Dr. Mitchell prescribed, *inter alia,* demerol and valium.[1] At 9:00 p.m. Mr. Mahoney was resting comfortably. At 2:00 a.m. the next day his speech was understandable. At 4:00 a.m. he was sleeping soundly. At 6:30 a.m. the pupils of his eyes were bilaterally dilated and did not react to light. At 7:20 a.m. Dr. Mitchell instructed Kona Hospital to transfer Mr. Mahoney to Queen's Medical Center in Honolulu. At 7:30 a.m. his pupils were fixed; he was unresponsive to painful stimuli and completely comatose. On the airplane, his condition further deteriorated. Consequently, he was taken to Tripler Army Medical Center, the closest hospital to the Honolulu airport, where a lumbar puncture indicated no evidence of bleeding and an EEG showed no brain activity. The next day he was disconnected from the respirator and declared dead. No autopsy was performed as Mrs. Mahoney declined to authorize it.

The three Mahoney children and Mrs. Mahoney, for herself and Mr. Mahoney's estate, sued Hawaiian Airlines, the State of Hawaii (Kona Hospital), and Dr. Mitchell.

Prior to trial, Michael Mahoney withdrew as a plaintiff, and the trial judge awarded summary judgment in favor of Hawaiian Airlines. The trial of the plaintiffs' claims against Dr. Mitchell was held before a jury. As to the plaintiffs' claims against Kona Hospital, the jury was advisory. *See* Hawaii Revised Statutes § 662-5 (1976) and Rule 39(c), Hawaii Rules of Civil Procedure (HRCP).

After the close of plaintiffs' evidence, the trial judge dismissed under Rule 41(b), HRCP, plaintiffs' claim against Kona Hospital. He also dismissed under Rule 50(a), HRCP, the following two of plaintiffs' claims against Dr. Mitchell: (1) that Dr. Mitchell "negligently failed to diagnose [Mr. Mahoney's] condition properly," and (2) that by "stating that it was better to leave [Mr. Mahoney] in Kona Hospital for at least one day for observation. . .[Dr.] Mitchell warranted and gua-

---

[1] Due to a chronic back condition, Mr. Mahoney had been taking valium, probably about ten milligrams daily.

ranteed that [Mr. Mahoney] would survive his stay at Kona Hospital and/or that there would be sufficient time to transfer him to Honolulu should the need arise."

The plaintiffs' expert was Dr. J. Paul Rader, a California neurosurgeon, who testified at a deposition but was not available to testify in person at trial.[2] Dr. Mitchell's expert was Dr. Kenneth K. Nakano, a Hawaii neurologist.

At the close of all the evidence, the jury was instructed to rule in favor of plaintiffs if it found (1) that Dr. Mitchell negligently failed to treat Mr. Mahoney with appropriate medication or (2) that Dr. Mitchell treated Mr. Mahoney with inappropriate medication or (3) that Dr. Mitchell negligently admitted Mr. Mahoney into Kona Hospital rather than immediately having him airlifted to a hospital in Honolulu. The jury returned a general verdict in favor of Dr. Mitchell. The plaintiffs appeal only the judgment in favor of Dr. Mitchell. We will deal with the four previously stated issues *seriatim*.[3]

I.

In an effort to discredit Dr. Rader, Dr. Mitchell deposed another California doctor, Dr. Alan Townsend Webb, who contradicted some of Dr. Rader's credentials. Dr. Webb also was not available to testify in person at trial.

---

[2] The relevant portion of Dr. Rader's deposition, which was taken in California, states as follows:

"Q Did you ever inform Mr. DiBianco that you would not testify in this case?

"A I've refused for the several years that I won't testify in any case including this one.

"Q How do you mean?

"A I've been sick. I tell people. They say, 'Well, do you want to testify?'

"I say, 'No. I'll be glad to give you my opinion on the thing but I'm not going to court.'

"Q That's why you don't anticipate coming out to Honolulu?

"A I certainly don't.

[3] The plaintiffs' amended opening brief contains only four points on appeal and four questions presented but contains arguments on ten alleged errors. Seven of the ten alleged errors are related to the four points on appeal. Numbers 1, 7, and 10 are not. Therefore, the latter three will not be considered. *John Wilson Enterprises v. Carrier Terminal,* 2 Haw. App. 128, 627 P.2d 294 (1981).

Prior to the trial, plaintiffs moved to prohibit the use of Dr. Webb's deposition on the ground that his testimony was "based upon hearsay oral remarks of others and the review of occasional documents which he has happened to see[.]" At the hearing on the motion, the trial judge advised plaintiffs that unless they agreed not to introduce certain portions of Dr. Rader's testimony, Dr. Webb's testimony contradicting those portions would probably be admitted into evidence. The judge was of the opinion that the portion of Dr. Rader's deposition which was contradicted by Dr. Webb's deposition was unnecessary to plaintiffs' case. Thereafter, plaintiffs elected to strike certain portions of Dr. Rader's deposition and at trial offered only the remainder in evidence. Dr. Webb's deposition was not offered nor received in evidence at trial.

On appeal plaintiffs contend that the trial judge erred in not suppressing Dr. Webb's testimony and in causing them to delete portions of Dr. Rader's testimony.

In our view, a party may not complain about the trial court's failure to grant his pretrial motion to suppress evidence if the evidence sought to be suppressed is not admitted at trial. *Lussier v. Mau-Van Development, Inc. I,* 4 Haw. App. 359, slip op. at 43-44 (No. 8309, July 21, 1983). Since Dr. Webb's deposition was not admitted in evidence, plaintiffs cannot complain that the trial judge erred in denying their pretrial motion to suppress.

Further, a party may not complain about being denied the opportunity to introduce testimony at trial unless the judge has unequivocally ruled that testimony inadmissible. *Id.; see* Rule 103, Hawaii Rules of Evidence, Chapter 626, Hawaii Revised Statutes. Here, the trial judge did not rule that Dr. Rader's testimony could not be admitted; therefore, it was not his error that caused the testimony not to be presented to the jury.

II.

Plaintiffs contend that during the trial, the judge made improper comments to their counsel in the presence of the jury, thus denying them a fair trial. They cite three instances, all of which occurred on the first day of a two-day trial.

The first instance occurred when on direct examination

plaintiffs' counsel was questioning nurse Sharon Matsuyama's statement that Mr. Mahoney's condition had improved and had not deteriorated from the time of his arrival at the hospital until she got off work at 3:00 p.m. Plaintiffs' counsel read a portion of the nurse's deposition testimony on the subject and the hospital's counsel wanted him to read all of it. At that point the following interchange occurred:

[PLAINTIFFS' COUNSEL]: I don't quite understand what [hospital's counsel] is asking for. Where does he want me to stop? I can read the whole deposition if he want[s] but —

THE COURT: Counsel, you know that's not what he's asking for.

We want to be fair in this trial. We're not trying this case on the basis of one-line answers.

Proceed.

The second instance occurred as follows:

[PLAINTIFFS' COUNSEL]: Thank you, your Honor. We'll call as the first witness Mrs. Sharon Matsuyama, Kona Hospital, and be sworn as an adverse witness because in order to accommodate the nurse from Kona Hospital I will be calling them out of order. I had intended to call Mrs. Mahoney first. We have to do things a little differently now.

[HOSPITAL'S COUNSEL]: I appreciate the fact that he is accommodating the nurses by calling them now, although I would object to either of these nurses being considered adverse witnesses.

THE COURT: I agree that as far as rules are concerned unless they are parties to the suit they are not adverse. They might be considered hostile only after, depending on the answers given.

\* \* \* \* \*

[HOSPITAL'S COUNSEL]: I object to this question as leading, your Honor. Let the witness testify. He's trying to use all the words — This is not an adverse witness. He's trying to lead her.

[PLAINTIFFS' COUNSEL]: I do not understand why, how [hospital's counsel] can keep saying this when, as you know, I subpoenaed this woman to come and testify here.

She's an employee of the State. She's one of the people against whom the —

THE COURT: [Plaintiffs' counsel], you know the rules as to the adverse witness and we shall abide by it.

Objection is sustained.

The third instance occurred when plaintiffs' counsel was conducting his direct examination of Dr. Mitchell.

Q   And would you agree that Mr. Mahoney began to deteriorate sometime during the very late hours of August 24th or very early morning hours of August 25th?

A   I think we have to go by the nurses' notes.

\* \* \* \* \*

Q   Doctor, are you testifying that your only recollection of the Mahoney treatment in Kona Hospital is based upon the nurses' notes?

[HOSPITAL'S COUNSEL]: I object to that that he didn't have a recollection of something. He didn't know in the first place.

THE COURT: Counsel, you started talking about the deterioration. Now you're talking about the whole history. I mean you're trying, you're not being fair with the questions. Why don't you ask him the question as to when he noticed the deterioration. How did he notice it? That's all he can answer.

[PLAINTIFFS' COUNSEL]: Now, I'm sorry, your Honor, but I'm a bit confused as to whether we're dealing with a witness who has no recollection of the incident or whether he just relies upon the records. Can I pursue that?

THE COURT: Come on, Counsel, you know darn well he saw him. Let's not waste our time here.

Proceed on the basis of what you started off with, but let's ask fair questions.

[PLAINTIFFS' COUNSEL]: Well, your Honor, I'm certainly trying to ask fair questions if I can understand the objection of counsel.

Q   Dr. Mitchell, let me ask you this then. When are you of the opinion that Mr. Mahoney did in fact begin to deteriorate?

A   When I was called at 6:00 o'clock in the morning.

Plaintiffs' counsel did not object to the above-mentioned statements by the trial judge until the next morning. If he deemed them prejudicial, he should have objected when they were made. *See* 75 Am. Jur. 2d *Trial* § 120 (1974). We note that the trial judge made no such comments after the objection was voiced.

Moreover, two of the trial judge's instructions to the jury were as follows:

> At times throughout the trial the Court had been called upon to pass upon objections to the admission of certain offered evidence in the form of oral testimony or exhibits. Questions relating to the admissibility of evidence are solely questions of law for the Court and you must not concern yourselves with the reasons for its rulings. In your consideration of the case you must draw no inferences from these rulings and you must consider only the evidence which is admitted by the Court.
>
>        \*    \*    \*
>
> Neither in these instructions nor in any ruling, action or remark that I have made during the course of this trial have I intended to interpose any opinion or suggestion as to how I would resolve any of the issues of this case.

In our view, the applicable rule of law concerning the trial judge's comments during a jury trial is stated in 75 Am. Jur. 2d *Trial* § 91 and § 87 (1974) as follows:[4]

> § 91. \* \* \* In jury trials the trial judge should be cautious and circumspect in his language and conduct before the jury. He must be fair to both sides, and the extent to which he may make comments and remarks during the trial is governed by the fundamental principle that he should say or do nothing which will prejudice the rights of the parties. He should especially refrain from any remarks calculated to influence the minds of the jury, or to prejudice a litigant. This includes remarks to counsel touching the management

---

[4] *See also* Annot., 94 A.L.R.2d 826 (1964).

of the case and reflecting on their conduct, as well as touching the character of the witnesses and the value of their testimony. However, upon a contention by an accused that he was denied a fair and impartial trial by the remarks of the trial judge, the appellate court must guard against the magnification of instances which were of little importance in their setting. [Footnotes omitted.]

§ 87. * * * How great a departure from fairness amounts to reversible error is determined by the answer to the fundamental inquiry whether or not what was done was prejudicial to the appellant[.]

Here, although the trial judge should not have made at least the last of the comments about which plaintiffs complain, we find that no juror reasonably may have been prejudicially influenced against plaintiffs by any or all of them. Furthermore, the court's instructions supplied sufficient protection against the possibility.

### III.

Plaintiffs contend that the trial court erred in not giving all of plaintiffs' requested instructions 4, 6, 7, 8, 9, 10, 20, and 21. We disagree.

It is not error for the trial judge to refuse to give an instruction about an issue which is not in controversy. *McKeague v. Talbert,* 3 Haw. App. 646, 658 P.2d 898 (1983). Instructions 20 and 21 and the portion omitted from instruction 4 related to the plaintiffs' two claims which had been disposed of by directed verdict. Consequently, neither claim was in controversy.

Further, it is not error for the trial judge to refuse to give an instruction which is substantially covered by other instructions given. *Matter of Estate of Coleman,* 1 Haw. App. 136, 615 P.2d 760 (1980). Instructions 6, 7, 8, 9, and 10 are in this category.

### IV.

After the trial, plaintiffs filed a motion for new trial, alleging in an affidavit signed by their counsel that the jurors selected their foreman and deliberated without the presence of

one of the jurors. At the hearing, plaintiffs wanted to withdraw the motion because the juror who was plaintiffs' counsel's source of information decided not to testify and was unavailable for service of a subpoena, but to set the record straight, the judge decided to proceed with the hearing. The jury foreman testified that all jurors were present when he was elected and that no deliberations were conducted without the presence of all of the jurors.

The foreman also testified that before the jury commenced discussion, they took a vote to see how everyone stood. That vote was ten for Dr. Mitchell, one for plaintiffs, and one abstention. Although they had the necessary ten votes for a verdict,[5] the jury decided to discuss the issues because they wanted to be fair and to hear the dissenting juror's point. The dissenting juror gave the foreman a note containing three questions which she wanted the judge to answer. In one, she wanted to know how much valium Mr. Mahoney was taking prior to his stroke. The foreman could not remember the other two. He testified that the jurors discussed the three questions and other points but did not communicate the questions to the judge. Thereafter, they took another vote and when all votes remained the same they rendered their verdict.

On appeal, the plaintiffs' contend that the jury reversibly erred when it took a vote before it deliberated and when its foreman failed to pass the juror's three questions to the judge.[6]

We noted in *Cabral v. McBryde Sugar Co., Ltd.,* 3 Haw. App. 223, 647 P.2d 1232 (1982), that Hawaii has adopted the rule stated in 76 Am. Jur. 2d *Trial* § 1219 (1975) "that testimony or affidavits of jurors impeaching a verdict rendered by them will not be received where the facts sought to be shown are such as inhere in the verdict." (Footnote omitted.)

Here, the plaintiffs are attempting to impeach the verdict on the grounds that the jury employed faulty procedure in arriving at a verdict.

---

[5] *See* Hawaii Revised Statutes § 635-20 (1976).

[6] It would have been within the trial court's discretion to answer the juror's questions. *State v. Chang,* 50 Haw. 195, 436 P.2d 3 (1967).

The trial judge instructed the jury in relevant part as follows:

> When you retire to the juryroom, your first duty will be to select one of your number as foreman or forelady who will preside over your deliberations and be your spokesman in court.
>
> It is necessary from this time until you are through with your consideration of this case that you remain together as a body. If it becomes necessary during your deliberations to communicate with the Court, you may send a note by the bailiff.
>
> You must not communicate on any subject whatsoever with any person other than your fellow jurors except through the bailiff. And bear in mind that you are not to reveal to the Court or to anyone else how the jury stands on the verdict until at least 10 of you (and I repeat, at least 10 of you) have agreed on it.
>
> When at least 10 of you agree on a verdict, your foreman or forelady will sign and date the verdict, and appropriate forms for which will be given to you, and you will notify the bailiff that a verdict has been reached. The Court will then be reconvened to enable you to return your verdict.

We find no error in these instructions, and there is no evidence in the record that the jury materially failed to comply with them. Consequently, there is no evidence that the jury used improper procedure in arriving at its verdict.

Affirmed.

*Paul E. Di Bianco* for appellants.

*Kenneth S. Robbins* (*Steven K. Hisaka* with him on the briefs) for appellee.