82 P.3d 401

STATE of Hawai'i, Plaintiff–Appellee,

v.

Andrew KAMANA'O, Defendant–
Appellant.

No. 25271.

Supreme Court of Hawai'i.

Dec. 3, 2003.

As Corrected Dec. 17, 2003.

Reconsideration Denied Dec. 22, 2003.

David Bettencourt, on the briefs, Honolulu, for the defendant-appellant Andrew Kamana'o.

Mangmang Qiu Brown, Deputy Prosecuting Attorney, on the briefs, for the Plaintiff Appellee State of Hawai'i.

MOON, C.J., LEVINSON, NAKAYAMA, ACOBA, and DUFFY, JJ.

Opinion of the Court by LEVINSON, J.

The defendant-appellant Andrew Kamana'o appeals from the order of the first circuit court, the Honorable Victoria S. Marks presiding, filed on August 14, 2002, denying Kamanao's motion for correction of illegal sentence, pursuant to Hawai'i Rules of Penal Procedure (HRPP) Rule 35 (2000) [hereinafter, "Rule 35 motion"].[1] On appeal, Kamana'o contends, *inter alia,* that: (1) the circuit court erred in finding that the sentencing court did not err in granting the motion of

---

1. HRPP Rule 35 provides in relevant part that "[t]he court may correct an illegal sentence at any time and may correct a sentence imposed in an illegal manner within the time provided herein for the reduction of sentence...."

the plaintiff-appellee State of Hawai'i [hereinafter, "the prosecution"] for an extended term of imprisonment, pursuant to Hawai'i Revised Statutes (HRS) § 706–662(4) (1983),[2] based on Kamanao's refusal to admit guilt with respect to the offenses of which he was convicted; (2) the circuit court erred in denying his motion for correction of illegal sentence, based on the United States Supreme Court's decision in *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000); and (3) the deputy public defender (DPD) rendered ineffective assistance by failing to (a) file memoranda to supplement Kamanao's motion for correction of illegal sentence drafted by his jailhouse lawyer, (b) investigate the record in order to assess the legality of Kamanao's extended term sentence, (c) failing to obtain a waiver of Kamanao's presence at the motion hearing, and (d) failing sufficiently to confer with Kamana'o in order to answer his questions and assure him that he would be represented adequately.

We agree with Kamana'o that the circuit court erred in finding that a sentence of imprisonment for an extended term was "warranted," thereby granting the prosecution's motion for an extended term of imprisonment, based on Kamanao's unwillingness to admit his culpability for the offenses of which he was convicted. We therefore hold that a sentencing court may not impose an enhanced sentence based on a defendant's refusal to admit guilt with respect to an offense the conviction of which he intends to appeal. Accordingly, we (1) vacate the circuit court's August 14, 2002 order denying Kamanao's motion for correction of illegal sentence, (2) vacate the circuit court's judgment of sentence, filed on January 10, 1984, and (3) remand the matter to the circuit court for resentencing.

## I. BACKGROUND

On October 13, 1983, a jury returned a guilty verdict, convicting Kamana'o, *inter alia*, of (1) two counts of rape in the first degree (a class A felony), in violation of HRS § 707–730 (repealed 1986), and (2) one count of sodomy in the first degree (a class A felony), in violation of HRS § 707–733 (repealed 1986).[3] On October 28, 1983, the prosecution filed a motion for an extended term of imprisonment, pursuant to HRS § 706–662(4), *see supra* note 2.[4]

On January 6, 1984, the circuit court, the Honorable Donald K. Tsukiyama presiding, conducted a hearing on the matter, during which the prosecution argued that Kamana'o, having been convicted of two or more felonies, was a "multiple offender" within the meaning of HRS § 706–662(4), *see supra* note 2, and that Kamanao's "extensive crimi-

---

**2.** HRS § 706–662(4) provided:

> **Criteria for sentence of extended term of imprisonment for felony.**
>
> The court may sentence a person who has been convicted of a felony to an extended term of imprisonment if it finds one or more of the grounds specified in this section. The finding of the court shall be incorporated in the record.
>
> . . . .
>
> (4) Multiple offender. The defendant is a multiple offender *whose criminality was so extensive that a sentence of imprisonment for an extended term is warranted.* The court shall not make such a finding unless:
>
> (a) The defendant is being sentenced for two or more felonies or is already under sentence of imprisonment for felony; or
>
> (b) The maximum terms of imprisonment authorized for each of the defendant's crimes, if made to run consecutively would equal or exceed in length the maximum of the extended term imposed, or would equal or exceed forty years if the extended term imposed is for a class A felony.

(Emphasis added.) As subsequently amended, HRS § 706–662(4) (Supp.2002) provides in relevant part that "[a] convicted defendant may be subject to an extended term of imprisonment ... if ... [t]he defendant is a multiple offender *whose criminal actions were so extensive that a sentence of imprisonment for an extended term is necessary for the protection of the public.* ..." (Emphasis added.)

**3.** In 1986, the legislature repealed HRS §§ 707–730 and 707–733. *See* Haw. Sess. L. Act 314, § 56 at 617. The offenses of rape in the first degree (the former HRS § 707–730) and sodomy in the first degree (the former HRS § 707–733) are now subsumed within HRS § 707–730, which has been redenominated "sexual assault in the first degree."

**4.** The jury also found Kamana'o guilty of three counts of burglary in the first degree, one count of attempted sodomy in the third degree, one count of sexual abuse in the first degree, and one count of harassment.

nality" warranted an extended term sentence. To that end, the prosecution urged that the following "aggravating factors" warranted an extended term sentence: (1) Kamanao's "pattern of conduct suggests [that] he represents a serious danger to society"; (2) the offenses of which Kamana'o was convicted "occurred while he was on probation"; (3) the presentence report listed Kamanao's prognosis as "poor" with respect to the ability to respond affirmatively to rehabilitation; and (4) Kamana'o demonstrated a "total lack of remorse for his conduct" and refused to admit his guilt.

Based on the foregoing arguments advanced by the deputy prosecuting attorney (DPA), the circuit court inquired as follows:

I'm not sure I understand the rationale.... Mr. Kamana'o is faced with a mandatory prison term of 20 years.

Are you saying that these circumstances ... justify extending the term from 20 years to the duration of his life? Why not 60 years or 40 years?

. . . .

What I'm asking is: Do you feel that life imprisonment in this case is necessary to punish Mr. Kamana'o solely, or is there some other reason why the Court should consider a life term as opposed to 20 years, which in itself is a fairly substantial prison term.

The DPA responded as follows:

Your Honor, basically, the State's position would be: If the Court would sentence [Kamana'o] to 20 years, if there would be some guaranty [sic] that he would be out of the community for that 20 years, then the State might consider just asking for the 20 years. But, under the circumstances, if it's left up to the Hawai'i Paroling Authority as to what his minimum [term of imprisonment] might be, then the State, before it would agree or be satisfied with a 20-year mandatory sentence and [Kamana'o's mandatory] minimum [term] being set at six, *the State would recommend or request life to increase his mandatory minimum [term].*

(Emphasis added.) In response, defense counsel contended that the lack of "violent contact" between Kamana'o and the three complainants constituted a "mitigating factor," which the sentencing court should consider in rendering its decision with respect to extended term sentencing. Defense counsel posited that the facts upon which the jury relied in convicting Kamana'o established that the "assailant" committed the offenses without gratuitous violence and, therefore, that an extended term of imprisonment was not "warranted."

Having heard the foregoing arguments by counsel, the circuit court granted the prosecution's motion for an extended term sentence, remarking as follows:

[T]here is no question, based on the evidence, and the Court finds and concludes that [Kamana'o] has been convicted of and is being sentenced for eight felonies, which are clearly reflected in the record herein. There's also no question, and the Court finds and concludes, that [Kamana'o] is already under a sentence of imprisonment for a felony in Criminal No. 52291, as previously indicated in relation to the Court's findings as to the motion for repeat offender sentencing. Further, the Court finds and concludes that the maximum terms of imprisonment authorized for each of [Kamanao's] convictions, if made to run consecutively, would exceed 40 years, and to the class A felonies alone, which are Counts VI, IX, and XI.

*The problem that the Court faces and addresses is whether or not, however, Mr. Kamanao's criminality is so extensive as to require an extended term of imprisonment from 20 years to life. I'm not sure I appreciate the rationale advanced by the Prosecution for its request for a life sentence. I would agree with [defense counsel] that[,] notwithstanding the seriousness of the offenses with which [Kamana'o] has been charged and for which he has been convicted, there appears to be no so-called aggravating circumstances. No weapons were used; there appears to be no other injuries inflicted upon the victims in this case. Certainly[,] had a weapon been used, even shown in this case, or had injury been inflicted upon the victims, the Court would, without hesitation, find that his offenses were so ex-*

*tensive as to require an extended term of imprisonment ....*

In addition to the nature and multiplicity of the offenses committed by [Kamana'o], the seriousness, *the flagrancy of his conduct is aggravated by what has been pointed out by [the DPA]: That he refuses to acknowledge his culpability for these offenses.* I cannot change what is in Mr. Kamanao's mind. *I can only go by the fact that a jury has convicted him of the offenses, and,* on that basis, the Court finds *that he is guilty of these offenses and is culpable. That being the case, his refusal to acknowledge this very serious behavioral problem,* which caused him to terrorize and victimize and assault his victims, *negates any reasonable expectation of his rehabilitation, whether in 20 years or for the duration of his life.*

It seems to the Court, and it is the Court's opinion, that [Kamanao's] criminality manifests a very serious, a very profound emotional or psychological problem, which must be treated before he may be reasonably and realistically and safely considered for reintegration into the community. *The essential first step which is apparent for rehabilitation and reintegration must be a recognition and acknowledgment of the existence of a problem,* and unless this problem can be identified and treated, based on the offenses for which [Kamana'o] has been convicted, he poses a very real, a very serious threat to the safety of the community.

Unfortunately, since [Kamana'o] neither acknowledges nor recognizes the existence of a problem, this attitude simply magnifies, as the Court indicated, the flagrancy and the seriousness of this criminality and precludes, unfortunately, any rational consideration of his rehabilitation. Now, *until and unless [Kamana'o] recognizes his problem, there can be no basis for a reasonable expectation of his rehabilitation.*

. . . .

What I am simply saying is, I don't know whether or not this problem can be identified and treated in a year, 10 years, 20 years, or more. I am saying, however, because of the seriousness of the problem, because it is profound, that if Mr. Kamana'o does not acknowledge, recognize that he has this problem, he cannot be rehabilitated, he cannot be redirected. And as long as he is not rehabilitated or redirected, he poses a very serious threat to the safety of the community....

Why am I pointing this out essentially? I'm pointing it out because any term of imprisonment for Mr. Kamana'o sets the maximum term. He is eligible for parole and the Hawai'i Paroling Authority must be responsible for making the kinds of hard decisions that will have to be made before Mr. Kamanao's reintegration into the community may be realistically and reasonably addressed. And I would be surprised if the Hawai'i Paroling Authority would view Mr. Kamanao's problem differently, although, granted it could; and it is not this Court's purpose to interfere with the function of the Hawai'i Paroling Authority. *But it is important for this Court to take the time to express to Mr. Kamana'o its reasoning, its analysis, for its judgment and sentence.*

Mr. Kamana'o did take the time to write to the Court a very lengthy letter, expressing his feelings. Well, Mr. Kamana'o, *these are the Court's feelings. It is because of these feelings that the Court is going to find that the material allegations in support of the motion for an extended term of imprisonment have been proved, and, accordingly, the motion for [an] extended term of imprisonment shall be granted.* ... And it is the judgment and sentence of this Court that [Kamana'o] shall be committed to the custody of the Director of the Department of Social Services and Housing for imprisonment, as follows:

As to Count XIV, Harassment, for a term of 30 days; as to Counts III, VII, and X, Burglary in the First Degree, for a term of 10 years until discharged according to law, with a mandatory term of 5 years without possibility of parole; as to Counts VIII and XII, Attempted Sodomy in the Third Degree and Sexual Abuse in the First Degree, respectively, for a term of five years with a mandatory minimum

term of 3 years, without possibility of parole as to Count XII; as to Counts VI, IX, and XI, Rape in the first degree [and sodomy in the first degree], for a term of life imprisonment with the possibility of parole, except for the first five years, which shall be served without the possibility of parole. . . .

(Emphases added.) The circuit court further ruled that all sentences were to run concurrently with each other.

On January 13, 1984, Kamana'o filed a timely notice of appeal of the circuit court's judgment of conviction and sentence. Kamana'o did not, however, raise any points of error on appeal with respect to sentencing. On June 13, 1985, this court affirmed the circuit court's judgment of conviction and sentence by memorandum opinion in No. 9699. *See State v. Kamana'o*, 67 Haw. 678, 744 P.2d 775 (1985) (mem.).

On September 15, 2000, Kamana'o filed the Rule 35 motion at issue in the present matter. On July 11, 2002, the circuit court, the Honorable Victoria S. Marks presiding, conducted a hearing on the matter and ultimately concluded that Kamanao's sentence was lawful. On August 14, 2002, the circuit court filed its findings of fact, conclusions of law, and order denying Kamanao's Rule 35 motion. On August 20, 2002, Kamana'o filed a timely notice of appeal.

We discuss additional facts as relevant *infra* in section III.

## II. *STANDARDS OF REVIEW*

### A. *Sentencing*

[A] sentencing judge generally has broad discretion in imposing a sentence. *State v. Gaylord*, 78 Hawai'i 127, 143–44, 890 P.2d 1167, 1183–84 (1995); *State v. Valera*, 74 Haw. 424, 435, 848 P.2d 376, 381 . . . (1993). The applicable standard of review for sentencing or resentencing matters is whether the court committed plain and manifest abuse of discretion in its decision. *Gaylord*, 78 Hawai'i at 144, 890 P.2d at 1184; *State v. Kumukau*, 71 Haw. 218, 227–28, 787 P.2d 682, 687–88 (1990); *State v. Murray* [,] 63 Haw. 12, 25, 621

P.2d 334, 342–43 (1980); *State v. Fry*, 61 Haw. 226, 231, 602 P.2d 13, 16 (1979). *Keawe v. State*, 79 Hawai'i 281, 284, 901 P.2d 481, 484 (1995). "[F]actors which indicate a plain and manifest abuse of discretion are arbitrary or capricious action by the judge and a rigid refusal to consider the defendant's contentions." *Fry*, 61 Haw. at 231, 602 P.2d at 17. And, " '[g]enerally, to constitute an abuse it must appear that the court clearly exceeded the bounds of reason or disregarded rules or principles of law or practice to the substantial detriment of a party litigant.' " *Keawe*, 79 Hawai'i at 284, 901 P.2d at 484 (quoting *Gaylord*, 78 Hawai'i at 144, 890 P.2d at 1184 (quoting *Kumukau*, 71 Haw. at 227–28, 787 P.2d at 688)).

*State v. Kaua*, 102 Hawai'i 1, 7, 72 P.3d 473, 479 (2003) (quoting *State v. Rauch*, 94 Hawai'i 315, 322, 13 P.3d 324, 331 (2000)) (brackets and ellipsis points in original).

### B. *Constitutional Law*

"We answer questions of constitutional law 'by exercising our own independent judgment based on the facts of the case,' " and, thus, questions of constitutional law are reviewed on appeal "under the 'right/wrong' standard." *State v. Jenkins*, 93 Hawai'i 87, 100, 997 P.2d 13, 26 (citations omitted).

*Kaua*, 102 Hawai'i at 7, 72 P.3d at 479 (quoting *State v. Aplaca*, 96 Hawai'i 17, 22, 25 P.3d 792, 797 (2001))

### C. *Plain Error*

"We may recognize plain error when the error committed affects substantial rights of the defendant." *State v. Cullen*, 86 Hawai'i 1, 8, 946 P.2d 955, 962 (1997) (citations and internal quotation signals omitted). *See also* Hawai'i Rules of Penal Procedure (HRPP) Rule 52(b) (1993) ("Plain error or defects affecting substantial rights may be noticed although they were not brought to the attention of the court.").

*State v. Shinyama*, 101 Hawai'i 389, 395, 69 P.3d 517, 523 (2003) (quoting *State v. Jenkins*, 93 Hawai'i 87, 101, 997 P.2d 13, 27 (2000) (quoting *State v. Staley*, 91 Hawai'i 275, 282, 982 P.2d 904, 911 (1999) (quoting

*State v. Maumalanga*, 90 Hawai'i 58, 63, 976 P.2d 372, 377 (1998) (quoting *State v. Davia*, 87 Hawai'i 249, 253, 953 P.2d 1347, 1351 (1998))))).

### III. DISCUSSION

 Although the Rule 35 motion was grounded exclusively in the alleged failure of the sentencing court, in 1984, to follow the subsequently articulated imperatives of *Apprendi*, and Kamanao's primary contentions on appeal relate to the lawfulness of his extended term sentence in light of *Apprendi*, the dispositive issue on appeal, and one of first impression in this jurisdiction, is whether the circuit court plainly erred in granting the prosecution's motion for an extended term of imprisonment based solely on Kamanao's refusal to admit his culpability for the offenses of which he was convicted, thereby violating Kamanao's constitutional privilege against self-incrimination, as guaranteed by the fifth amendment to the United States Constitution and article I, section 10 of the Hawai'i Constitution.[5] Kamana'o asserts that, notwithstanding that the prosecution filed its motion for an extended term sentence on grounds that he was a "multiple offender" within the meaning of HRS § 706-662(4), the circuit court "diverged substantially" from the allegations set forth in the prosecution's motion by "abandon[ing] any pretense of factual inquiry and digress[ing] into Appellant Kamanao's refusal to waive

his constitutional rights and admit the offenses in the Indictment as establishing an emotional or psychological problem indicative of future dangerousness." Kamana'o maintains that he "intended at all times to appeal his convictions, thus making it unwise and legally imprudent to admit" his guilt in the circuit court during the sentencing hearing.[6] We agree with Kamana'o and hold that the circuit court violated Kamanao's constitutional privilege against self-incrimination by imposing an enhanced sentence in the present matter—*i.e.*, extended terms of life imprisonment with the possibility of parole—based solely on Kamanao's refusal to admit his guilt with respect to the offenses of which he was convicted by the jury.

 Pursuant to the fifth amendment to the United States Constitution and article I, section 10 of the Hawai'i Constitution, a criminal defendant has the right to remain silent and not incriminate himself or herself in a criminal proceeding. *State v. Russo*, 67 Haw. 126, 131–33, 681 P.2d 553, 558–59 (1984); *State v. Santiago*, 53 Haw. 254, 265–66, 492 P.2d 657, 664 (1971). The right to remain silent, otherwise referred to as the privilege against self-incrimination, "provides us with some of our most treasured protections—preservation of our autonomy, privacy, and dignity against the threat of state action." *State v. Reyes*, 93 Hawai'i 321, 329, 2 P.3d 725, 733 (App.2000).[7] Although most commonly reviewed in the context of the

---

5. The fifth amendment to the United States Constitution provides in relevant part that "[n]o person shall be . . . compelled in any Criminal Case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law. . . ." Article I, section 10 of the Hawai'i Constitution provides in relevant part that "[n]o person shall be . . . compelled in any criminal case to be a witness against oneself."

6. Kamanao's argument, as set forth in his opening brief on appeal, that the circuit court's imposition of an extended term sentence violated his constitutional privilege against self-incrimination is cursory. Although Kamana'o periodically refers to the circuit court's reliance on his refusal to admit guilt, he provides no legal support for his argument, as the prosecution notes in its answering brief; in fact, Kamana'o cites not a single case in support of his strongest argument on appeal in the present matter. Consequently, the prosecution has not responded to Kamanao's argument with respect to the foregoing.

7. In *Reyes*, the Intermediate Court of Appeals (ICA) held that the defendant's (1) refusal to admit the sex offenses of which he was convicted and (2) failure of several lie detector tests administered as mandated by the Hawai'i Sex Offender Treatment Program did not constitute the "inexcusabl[e] fail[ure] to comply with a substantial requirement" of his probation that would warrant a revocation of probation and resentencing to a term of imprisonment. 93 Hawai'i at 328–30, 2 P.3d at 732–34. In so holding, the ICA endorsed the proposition that "[c]ourt-ordered programs that require convicted sex offenders to admit responsibility for the offense of which they were convicted under threat of probation revocation and imprisonment violate [the fifth amendment right against self-incrimination]." *Id.* at 329, 2 P.3d at 733 (citation and internal quotation signals omitted).

adjudicatory phase of a trial proceeding, the privilege against self-incrimination applies with equal force during sentencing. *State v. Valera*, 74 Haw. 424, 438, 848 P.2d 376, 382 (1993) (extending the privilege against self-incrimination to the sentencing phase of a criminal proceeding); *State v. Shreves*, 313 Mont. 252, 60 P.3d 991, 995 (2002) ("[T]he privilege against self incrimination 'does not turn upon the type of proceeding in which its protection is invoked, but [rather] upon the nature of the statement or admission and the exposure which it invites.' ") (some brackets added and some in original) (citations omitted).

■ We are aware that it is well settled that a sentencing court may consider a defendant's lack of remorse in assessing the likelihood of successful rehabilitation. *See, e.g., Jennings v. State*, 339 Md. 675, 664 A.2d 903, 910 (1995) ("[A] sentencing court may consider, on the issue of a defendant's prospects for rehabilitation, the defendant's lack of remorse."); *State v. Tiernan*, 645 A.2d 482, 486 (R.I.1994) (holding that the sentencing court properly considered the "defendant's refusal to acknowledge guilt for the limited purpose of assessing defendant's potential for rehabilitation"); *State v. Clegg*, 635 N.W.2d 578, 581 (S.D.2001) ("[A] defendant's remorse and prospects for rehabilitation are proper considerations in sentencing."); *State v. Fuerst*, 181 Wis.2d 903, 512 N.W.2d 243, 247 (Ct.App.1994) ("[A] sentencing court does not erroneously exercise its discretion by noting a defendant's lack of remorse as long as the court does not attempt to compel an admission of guilt or punish the defendant for maintaining his innocence."); *cf. State v. Nooner*, 114 Idaho 654, 759 P.2d 945, 946–47 (Ct.App.1988) (concluding that, inasmuch as the sentencing court "did not rely solely upon Nooner's continued denial of guilt" after his conviction, such a consideration, "in light of all the evidence presented, did not constitute error"). A sentencing court, however, may *not* infer a lack of remorse from a criminal defendant's refusal to admit guilt.[8] *Shreves*, 60 P.3d at 996 ("[A] sentencing court may not draw a negative inference of lack of remorse from the defendant's silence at sentencing where he has maintained, throughout the proceedings, that he did not commit the offense of which he stands convicted—*i.e.*, that he is actually innocent."). "Remorse," after all, is defined as "deep and painful regret for *wrongdoing.*" *Webster's Encyclopedic Unabridged Dictionary of the English Language* 1214 (1989) (emphasis added). Acknowledgment or admission of the "wrongdoing," then, is foundational to the expression of "remorse."

Consistent with the foregoing, a significant number of jurisdictions has recognized the subtle, yet meaningful, distinction between imposing a harsher sentence upon a defendant based on his or her lack of remorse, on the one hand, and punishing a defendant for his or her refusal to admit guilt, on the other, the latter being a violation, *inter alia*, of a criminal defendant's rights to due process, to remain silent, and to appeal. *See United States v. Oliveras*, 905 F.2d 623, 626 (2d Cir.1990) (noting that, although the Federal Sentencing Guidelines § 3E1.1 provides for a lesser sentence based on a defendant's "sincere remorse," "the government cannot impose penalties because a person has elected to assert his constitutional right not to make

---

8. Similarly, " 'courts have long adhered to the principle forbidding a trial court from improperly considering the defendant's exercise of his constitutional right to a jury trial as an influential factor in determining the appropriate sentence.' " *State v. Hazel*, 317 S.C. 368, 453 S.E.2d 879, 880 (1995) (citations and bracket omitted); *see also Jennings*, 664 A.2d at 908 ("[A] trial court may not punish a defendant for invoking his right to plead not guilty and putting the State to its burden of proof for protesting his innocence."); *Commonwealth v. Bethea*, 474 Pa. 571, 379 A.2d 102, 104 (1977) (" 'An accused cannot be punished by a more severe sentence because he unsuccessfully exercised his constitu-

tional right to stand trial rather than plead guilty ....' ") (quoting *Commonwealth v. Staley*, 229 Pa.Super. 322, 324 A.2d 393, 395 (1974)); *Clegg*, 635 N.W.2d at 580 ("[A]n inference of lack of remorse may not be drawn from an accused's plea of not guilty."); *Gallucci v. State*, 371 So.2d 148, 150 (Fla.Dist.Ct.App.1979) ("[A] trial court may not impose a greater sentence on a defendant because such defendant avails himself of his constitutional right to a trial by jury."); *State v. Follin*, 352 S.C. 235, 573 S.E.2d 812, 824 (Ct. App.2002) ("[A] sentencing judge may *NOT* improperly consider a defendant's decision to proceed with a jury trial.") (Emphasis in original.), *cert. denied*, 352 S.C. 235, 573 S.E.2d 812 (2003).

statements that would incriminate him"); *Thomas v. United States,* 368 F.2d 941, 946 (5th Cir.1966) (vacating a defendant's sentence in light of the sentencing court's imposition of a harsher sentence based on the defendant's refusal to waive his fifth amendment rights); *Harden v. State,* 428 So.2d 316, 317 (Fla.Dist.Ct.App.1983) ("The defendant retains important fifth amendment rights after the jury reaches a verdict; these rights may not be made the price of sentencing leniency. Thus, the court cannot place the defendant in the dilemma of either abandoning his fifth amendment rights or risking a harsher sentence."); *People v. Byrd,* 139 Ill. App.3d 859, 94 Ill.Dec. 398, 487 N.E.2d 1275, 1280 (1986) ("A more severe sentence may not be imposed because a defendant refuses to abandon his claim of innocence...."); *State v. Ruan,* 419 N.W.2d 734, 738 (Iowa Ct.App.1987) (holding that, although "it is impermissible for a sentencing court to base its decision on a defendant's refusal to admit guilt[,]" a sentencing court may rely on a defendant's lack of remorse and respect for the law in imposing his or her sentence); *People v. Yennior,* 399 Mich. 892, 282 N.W.2d 920, 920 (1977) ("A court cannot base its sentence even in part on a defendant's refusal to admit guilt."); *People v. Grable,* 57 Mich.App. 184, 225 N.W.2d 724, 727 (1974) ("[W]e believe that an accused has the right to maintain his innocence after conviction. No additional penalty is to be imposed for continuing to proclaim one's innocence."); *Shreves,* 60 P.3d at 996 ("While we agree with the State that rehabilitation is an important factor to consider at sentencing and, while we agree that lack of remorse can be considered as a factor in sentencing, we cannot uphold a sentence that is based on a refusal to admit guilt."); *Tiernan,* 645 A.2d at 485–86 (recognizing a defendant's " 'sense of remorse' " as a sentencing factor but noting that, "[t]o ... impose a penalty upon a defendant in the form of an enhanced sentence for invoking [the privilege against self-incrimination] would amount to a deprivation of due process of law") (citations omitted); *State v. Baldwin,* 101 Wis.2d 441, 304 N.W.2d 742, 751 (1981) (" 'A trial judge may ... take into consideration such expressions as indicative of the likelihood that the rehabilitory process hoped for in the criminal law has commenced; but where ... the defendant refuses to admit his guilt, that fact alone cannot be used to justify incarceration rather than probation.' ") (internal quotations signals and citation omitted); *Fuerst,* 512 N.W.2d at 247 ("A court is prohibited from imposing a harsher sentence solely because the defendant refused to admit his guilt.... However, ... a sentencing court does not erroneously exercise its discretion by noting a defendant's lack of remorse as long as the court does not attempt to compel an admission of guilt or punish the defendant for maintaining his innocence.") (Citations omitted.).

In *Thomas,* the United States Court of Appeals for the Fifth Circuit addressed whether a sentence could be collaterally attacked on the basis that the sentencing court imposed the maximum term permitted by law only after the defendant refused to admit guilt for the offenses of which he was convicted. 368 F.2d at 942. Prior to sentencing, the sentencing court had remarked as follows:

'THE COURT: I am going to tell you something and I want you to think carefully before you answer.

'You have been proven guilty beyond a reasonable doubt by overwhelming evidence—by the testimony of five eye-witnesses, plus the testimony of one of the persons who participated in the robbery.

....

'If you will come clean and make a clean breast of this thing for once and for all, the Court will take that into account in the length of sentence to be imposed. If you persist, however, in your denial, as you did a moment ago, that you participated in this robbery, the Court also must take that into account. Now which will it be?

*Id.* at 943–44. The defendant ultimately persisted in his claim of innocence, and the sentencing court thereafter sentenced him to the maximum term of imprisonment. *Id.* at 944. In vacating the defendant's sentence and remanding for resentencing, the Court of Appeals noted:

It must be remembered that, at the time of his allocution, Thomas had not been finally and irrevocably adjudged guilty. Still open to him were the processes of motion for new trial (including the opportunity to discover new evidence), appeal, petition for certiorari, and collateral attack. Indeed, appeal is now an integral part of the trial system for finally adjudicating the guilt or innocence of a defendant.

. . . .

Thomas suffered the consequences for choosing the second 'if' in the form of a longer prison term. When Thomas received harsher punishment than the court would have decreed had he waived his Fifth Amendment rights, he paid a judicially imposed penalty for exercising his constitutionally guaranteed rights. Upon that ground alone, we think that his sentence is 'subject to collateral attack,' and have little doubt as to the authority and duty of the district court to vacate the sentence.

*Id.* at 945–46 (footnote omitted). *See also United States v. Woods,* 927 F.2d 735, 736 (2d Cir.1991) ("What a court may not do, consistent with the Fifth Amendment, is require a defendant to *admit* to criminal behavior as a condition of obtaining a reduction in punishment.") (Emphasis in original.); *Poteet v. Fauver,* 517 F.2d 393, 398 (3d Cir. 1975) (concluding that the augmentation of a sentence based on the defendant's refusal to admit guilt violated the due process clause of the fourteenth amendment to the United States Constitution); *People v. Johnson,* 94 Ill.2d 555, 70 Ill.Dec. 511, 449 N.E.2d 858, 859 (1983) (noting that a " 'person who believes he is innocent though convicted should not be required to confess guilt to a criminal *act* he honestly believes he did not commit.' Otherwise, honest persons; professing their innocence, may receive greater punishment than perjurers who admit to a crime that they did not commit.") (Emphasis in original.) (Citation omitted.); *State v. Imlay,* 249 Mont. 82, 813 P.2d 979, 985 (1991) ("[T]he better reasoned decisions are those decisions which protect the defendant's constitutional right against self-incrimination, and which prohibit augmenting a defendant's sentence because he refuses to confess to a crime or invokes his privilege against self-incrimination.").

In *People v. Wesley,* 428 Mich. 708, 411 N.W.2d 159, 162 (1987), the Michigan Supreme Court applied a three-factor analysis in ascertaining whether a sentencing court had erroneously relied on a defendant's refusal to admit guilt in imposing a sentence:

(1) the defendant's maintenance of innocence after conviction, (2) the judge's attempt to get the defendant to admit guilt, and (3) the appearance that[,] had the defendant affirmatively admitted guilt, his sentence would not have been so severe. . . . [I]f there is an indication of the three factors, then the sentence was likely to have been improperly influenced by the defendant's persistence in his innocence. If, however, the record shows that the court did no more than address the factor of remorsefulness as it bore upon defendant's rehabilitation, then the court's reference to a defendant's persistent claim of innocence will not amount to error requiring reversal.

*Id.*

Applying the *Wesley* factors to the present matter, we believe that Kamanao's refusal to admit guilt "improperly influenced" the circuit court's decision to grant the prosecution's motion for an extended term of imprisonment. With respect to the first factor, the record reflects that Kamana'o maintained his innocence after his convictions; in his remarks to the sentencing court, Kamana'o stated, "I cannot say I'm guilty for these charges, but I was found guilty [by the jury]." In addition, defense counsel, for purposes of argument at the extended term sentencing hearing, expressly and merely assumed *arguendo* that Kamana'o was the "assailant," thereby implicitly maintaining that Kamana'o was innocent of the crimes of which he was convicted.

Regarding the second factor, although the circuit court did not coerce Kamana'o into admitting culpability for his convictions, or otherwise warn him that the circuit court would consider an admission of guilt, or lack thereof, in ruling on the prosecution's motion, the circuit court did confirm with Kamana'o

his persistence in maintaining his claim of innocence—*i.e.*, "Your position essentially remains unchanged? The position that you expressed in your letter?"

Finally, we believe that the third factor, as applied to the facts of the present case, weighs heavily in favor of vacating Kamanao's sentence and remanding the matter for resentencing. During the extended term sentencing hearing, the prosecution cited as aggravating circumstances to support an extended term sentence, *inter alia,* Kamanao's "total lack of remorse for his conduct" and his refusal to admit guilt. In ruling on the prosecution's motion, the circuit court expressly stated that it was unpersuaded by "the rationale advanced by. the Prosecution for its request for a life sentence," [9] that is, the prosecution's concession that its primary purpose in moving for extended term sentencing was to increase Kamanao's mandatory minimum sentence assigned by the Hawai'i Paroling Authority, and found an absence of any aggravating circumstances. Indeed, the circuit court emphasized that, "had a weapon been used, even shown in this case, or had injury been inflicted upon the victims, the Court would, without hesitation, find that his offenses were so extensive as to require an extended term of imprisonment...."

Notwithstanding the absence of any aggravating circumstances, the circuit court found that Kamanao's refusal to acknowledge his criminal behavior "negate[d] any reasonable expectation of his rehabilitation," thereby warranting an extended term sentence. The circuit court commented that "the flagrancy of [Kamanao's] conduct is aggravated by what. has been pointed out by [the DPA]: That [Kamana'o] refuses to acknowledge his culpability for these offense." Accordingly, it is apparent to us that the circuit court inferred a poor prognosis for rehabilitation on the sole basis of Kamanao's refusal to admit guilt. In so doing, the circuit court penalized Kamana'o for his refusal to admit guilt by

extending his sentence for his class A felony convictions from twenty years to extended terms of life imprisonment with the possibility of parole, while Kamana'o still had a viable right to appeal his convictions. Unquestionably, an admission of guilt would have, at minimum, undermined Kamanao's arguments on appeal.

As discussed *supra*, although a sentencing court may consider a defendant's lack of remorse in evaluating the likelihood of rehabilitation, the circuit court's sentencing remarks in the present matter leave no doubt that it granted the prosecution's motion for an extended term of imprisonment simply because Kamana'o refused to surrender his privilege against self-incrimination, one . of the most substantial constitutional rights afforded a criminal defendant. In fact, the clear implication of the circuit court's remarks is that, had Kamana'o waived his privilege against self-incrimination and admitted his guilt, the circuit court would have denied the prosecution's motion for extended term sentencing.

In light of the foregoing, we hold that, because a sentencing court is prohibited from imposing an enhanced sentence as a function of a defendant's refusal to admit guilt, the circuit court plainly erred in denying Kamanao's Rule 35 motion.

## IV. *CONCLUSION*

Accordingly, we (1) vacate the circuit court's order, filed on August 14, 2002, denying Kamanao's Rule 35 motion, (2) vacate the circuit court's judgment with respect to sentence, filed on January 10, 1984, and (3) remand the matter to the circuit court for resentencing.[10]

---

9. However, immediately prior to sentencing Kamana'o to an extended term of life imprisonment with the possibility of parole, the circuit court explained that Kamanao's inability to be rehabilitated was critical to its decision to grant the

prosecution's motion "because any term of imprisonment for Mr. Kamana'o sets the maximum term."

10. This court's recent decision in *State v. Kaua,* 102 Hawai'i 1, 13, 72 P.3d 473, 485 (2003),

which rejected an *Apprendi* challenge of the constitutionality of HRS § 706–662 under both the United States and Hawai'i Constitutions, disposes of Kamanao's first point of error.

Moreover, in light of our disposition herein, we need not, and do not, reach the merits of Kamanao's arguments in support of his third point of error regarding the ineffective assistance of counsel in the proceedings below.