NOT FOR PUBLICATION IN WEST'S HAWAIʻI REPORTS AND PACIFIC REPORTER

**Electronically Filed
Intermediate Court of Appeals
CAAP-19-0000133
29-MAR-2021
07:51 AM
Dkt. 57 SO**

NO. CAAP-19-0000133

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI

JON RIKI KARAMATSU, Petitioner-Appellant, v.
STATE OF HAWAIʻI, Respondent-Appellee

APPEAL FROM THE DISTRICT COURT OF THE FIRST CIRCUIT
(HONOLULU DIVISION)
(CIVIL NO. 1SD18-1-1)

SUMMARY DISPOSITION ORDER
(By: Ginoza, Chief Judge, Leonard and Nakasone, JJ.)

Petitioner-Appellant Jon Riki Karamatsu (**Karamatsu**) appeals from the Findings of Fact, Conclusions of Law and Order Denying Petitioner's Rule 40 Petition for Post Conviction Relief (**Order Denying Relief**), filed on February 5, 2019, in the Honolulu Division of the District Court of the First Circuit (**District Court**).[1]

On March 2, 2016, Karamatsu was convicted of Operating a Vehicle Under the Influence of an Intoxicant (**OVUII**), in

---

[1] The Honorable Trish Morikawa presided.

violation of Hawaii Revised Statutes (**HRS**) § 291E-61(a)(1). State v. Karamatsu, CAAP-16-0000246, 2017 WL 2839545, *1 (App. June 30, 2017) (mem. op.), cert. denied, 2017 WL 6524751, *1 (Haw. Dec. 21, 2017). Karamatsu was sentenced to five days imprisonment, 72 hours of community service, license revocation for one year, and a $1,000 fine. Id.

On direct appeal, Karamatsu claimed there was insufficient evidence to show he operated his truck while impaired, the District Court failed to obtain a valid waiver of his right to testify, the charge was defective for failing to define the term "alcohol," there was insufficient evidence to prove he was impaired by alcohol, and the roadblock where he was stopped was illegal because it failed to comply with the statutory requirement. Id. On June 30, 2017, this court affirmed Karamatsu's conviction. Id. On December 21, 2017, Karamatsu's application for writ of certiorari was denied by the Hawaiʻi Supreme Court.

On April 20, 2018, Karamatsu filed a Rule 40 Petition for Post Conviction Relief (**Petition**). Karamatsu argued that the trial judge's off-the-record pretrial comments to his attorney violated his Due Process rights under article I, section 5 of the Hawaiʻi Constitution, and his attorney, Alen Kaneshiro (**Kaneshiro**), provided ineffective assistance for failing to object to the pretrial statements, failing to seek recusal of the judge prior to trial, and failing to raise the judge's comments

2

on direct appeal. On February 5, 2019, after a hearing on the Petition, the District Court issued the Order Denying Relief.

Karamatsu raises a single point of error on appeal, contending that the District Court erred in denying the Petition because Kaneshiro was ineffective at trial and on direct appeal because he failed to raise the judge's bias on the record. More specifically, Karamatsu challenges Findings of Fact (**FOFs**) 16 and 17 and Conclusions of Law (**COLs**) 2, 3, 4, 5, 7, and 9, and claims that his attorney was ineffective for failing to raise the issue of bias, to place the trial judge's pretrial comments on the record, to move to recuse the trial judge, and to appeal based on these issues. On this appeal, as he did below, Karamatsu points to Rules 2.2 and 2.4(a) of the Hawaiʻi Revised Code of Judicial Conduct (**CJC**) to support his claim that the trial judge was biased and should not have been influenced by fear of criticism, and relies on State v. Sanney, 141 Hawaiʻi 14, 404 P.3d 280 (2017), for the proposition that a judge should impose the same sentence after conviction as stated in the court's sentencing inclination.

Upon careful review of the record and the briefs submitted by the parties, and having given due consideration to the arguments advanced and the issues raised by the parties, we resolve Karamatsu's point of error as follows:

We address Karamatsu's arguments in the context of his challenges to the District Court's FOFs and COLs.

Karamatsu challenges the second paragraph of FOF 16 by pointing to testimony that Kaneshiro did not tell Karamatsu about the pretrial comments until after Karamatsu's appeal had begun; thus, Karamatsu argues his attorney made decisions regarding the case without first speaking with Karamatsu.[2/]  While there was conflicting testimony, Kaneshiro testified that he informed Karamatsu about what occurred in the pretrial conference prior to trial, that they discussed his impression that the trial judge would find Karamatsu guilty and impose a harsh sentence, and that Karamatsu decided to proceed with trial.  The record does not lack substantial evidence to support the second paragraph of FOF 16, and therefore, it is not clearly erroneous.

Karamatsu argues that "[a]s to finding of fact #17 the court found there was no bias from [the trial judge] against KARAMATSU."  However, FOF 17 does not include a finding that the trial judge, the Honorable David W. Lo (**Judge Lo**) was not biased; instead it appears to summarize Karamatsu's testimony and does not mention bias.  Therefore, FOF 17 is not clearly erroneous.

Karamatsu claims COL 5 is wrong because both he and Kaneshiro testified that Karamatsu was not informed of Judge Lo's pretrial comments until after trial, and thus, Karamatsu made a

---

[2/]    The second paragraph of FOF 16 states:

> In regard to preparation for Petitioner's case, Kaneshiro filed appropriate motions and was prepared for the motions and trial.  Kaneshiro and Petitioner openly discussed the case including strengths and weaknesses, issues and motions.  Kaneshiro made no decision regarding the case without first speaking with Petitioner.

strategic decision to go to trial without the information regarding the pretrial conference, and Kaneshiro did not communicate every aspect of the case.  As discussed above, Kaneshiro testified that Karamatsu was informed about what happened in the pretrial conference prior to trial.  COL No. 5, which includes that "Kaneshiro was not ineffective for failing to raise the issue [of bias] as [Karamatsu] and Kaneshiro discussed Kaneshiro's concerns prior to trial and they made a strategic decision to proceed to trial before Judge Lo," is not wrong.

Karamatsu challenges the conclusion that Judge Lo was not biased, which is stated in COLs 2, 3, 4, and 7.  Citing CJC Rule 2.2, commentary to the rule, and the trial judge's comments, Karamatsu argues Judge Lo was not impartial because he did not want to face public criticism for being seen as imposing too lenient a sentence, similar to public criticism of another judge the previous week, Judge Lo told Kaneshiro to consider a plea, and Judge Lo was not open-minded with respect to the factual evidence in the case.

CJC Rule 2.2 states:  "A judge shall uphold and apply the law and shall perform all the duties of judicial office fairly and impartially."  The Commentary elaborates:  "To ensure impartiality and fairness to all parties, a judge must be objective and open-minded."  Comment [1] to CJC Rule 2.2.  The CJC defines "impartial," "impartiality," and "impartially" as "absence of bias or prejudice in favor of, or against, particular

parties or classes of parties, as well as maintenance of an open mind in considering issues that come or may come before a judge." And, the supreme court has held:

> [W]here judicial misconduct or bias deprives a party of the impartiality to which he or she is entitled, a new trial may be required. However, reversal on the grounds of judicial bias or misconduct is warranted only upon a showing that the trial was unfair. . . . Unfairness, in turn, requires a clear and precise demonstration of prejudice. See Mahoney v. Mitchell, 4 Haw. App. 410, 418, 668 P.2d 35, 40-41 (1983) ("[h]ow great a departure from fairness amounts to reversible error is determined by the answer to the fundamental inquiry whether or not what was done was prejudicial to the appellant") (citation omitted); see also Peters [v. Jamieson ], 48 Haw. [247], 264, 397 P.2d [575], 586 [ (1964) ] ("[p]rejudice is the ultimate fact" (citation omitted)).

State v. Hauge, 103 Hawaiʻi 38, 48, 79 P.3d 131, 141 (2003) (some citations omitted).

Karamatsu does not challenge FOF 7, which found that:

> Judge Lo told Kaneshiro that if [Karamatsu] pled and took responsibility for his actions, Judge Lo would sentence Karamatsu to a seven hundred fifty dollar ($750.00) fine and no community service work. Judge Lo further stated that he hesitated about being too lenient because he did not want to end up like [another judge] from the prior week.

With respect to his sentencing by Judge Lo, Karamatsu points to Sanney, 141 Hawaiʻi at 19-20, 404 P.3d at 285-86 (citing People v. Clancey, 56 Cal. 4th 562, 155 Cal. Rptr.3d 485, 299 P.3d 131 (2013)), in which the supreme court held that a plea bargain is an agreement negotiated by the State with a defendant and approved by the court whereby a defendant pleads guilty in order to obtain a reciprocal benefit. The supreme court emphasized that a trial court has no authority to substitute itself as the representative of the State in the negotiation process and, under the guise of plea bargaining, to agree to a

disposition of the case over prosecutorial objection. Id. at 20, 404 P.3d at 286. "[W]here a defendant pleads guilty to all charges so all that remains is the pronouncement of judgment and sentencing, there is no requirement that the [State] consent to a guilty plea." Id. "In that circumstance, the court may indicate what sentence it will impose if a given set of facts is confirmed, irrespective of whether guilt is adjudicated at trial or admitted by plea." Id.

Here, Judge Lo provided a sentencing inclination by stating what sentence would be imposed if Karamatsu pled guilty. No plea negotiations occurred; rather, Judge Lo considered Karamatsu's existing record when he stated he knew about Karamatsu's prior conviction. Thus, the trial judge did not consider Karamatsu's exercise of his right to a trial as an influential factor in determining the sentencing inclination, and there was no bargaining over what sentence would be imposed. See id. at 21, 404 P.3d at 287.

Karamatsu has not shown his *trial* was unfair by relying only upon the sentencing inclination. The sentencing inclination relates only to the sentence the District Court would impose whether Karamatsu pled guilty or was found guilty after trial and did not affect the trial. "An indicated sentence, properly understood, is not an attempt to induce a plea by offering the defendant a more lenient sentence than what could be obtained through plea negotiations with the prosecuting authority."

Clancey, 56 Cal. 4th at 575, 299 P.3d at 139. Therefore, merely stating a sentencing inclination is not an order or advice for a defendant to take a plea instead of proceeding with trial.

Judge Lo testified at the hearing on the Petition that he did not know about the merits of the case when he stated his inclination, and that Kaneshiro and the deputy prosecuting attorney did not say anything about the merits of the case. No evidence to the contrary is in the record. There is no evidence in the record that the trial judge was not open-minded about the factual evidence of the case. As discussed below, an error by a judge in sentencing a defendant to a harsher sentence for exercising the right to a trial is a violation of the right to remain silent and due process, but it is not judicial bias. We conclude that Karamatsu failed to demonstrate that Judge Lo was biased, which would have required recusal from the trial, and Kaneshiro was not ineffective for failing to move for Judge Lo's recusal on the grounds of bias. Therefore, COLs 2, 3, 4, 5, and 7 are not wrong with respect to concluding that Judge Lo was not biased and that Karamatsu's counsel was not ineffective for failing to move to recuse Judge Lo.

Karamatsu further challenges COL 7, which found his counsel was not ineffective for failing to raise the bias issue. Karamatsu argues that Kaneshiro was ineffective by failing to put Judge Lo's pretrial comments on the record, which is not squarely addressed by COL 7. However, no other conclusion of law

specifically addresses whether Kaneshiro was ineffective for failing to place the trial judge's pretrial comments on the record, including the trial judge's sentencing inclination. Karamatsu claims that if Kaneshiro had objected to the sentence after trial, based on the difference in the sentencing inclination, his appeal would have resulted in a new trial or resentencing before a different judge.

It has been held that "the sentencing inclination must be the same punishment the court would be prepared to impose if the defendant were convicted after trial." Sanney, 141 Hawaiʻi at 21, 404 P.3d at 287. However, "[a] sentencing inclination is not binding; it is merely a trial court's statement of the sentence it would be inclined to impose for the offense(s) charged, should the defendant be convicted after trial." Id. A sentencing court may consider a defendant's lack of remorse in assessing the likelihood of successful rehabilitation, but may not infer lack of remorse from a defendant's refusal to admit guilt or consider a defendant's exercise of his constitutional right to trial as an influential factor in determining the appropriate sentence. State v. Kamanaʻo, 103 Hawaiʻi 315, 321, 82 P.3d 401, 407 (2003). Punishing a defendant for refusal to admit guilt is a violation of due process, the right to remain silent, also referred to as the privilege against self-incrimination, and to appeal. Id. at 320-21, 82 P.3d at 406-07. The privilege

against self-incrimination applies with equal force during sentencing.  Id.

> [W]hether a sentencing court had erroneously relied on a defendant's refusal to admit guilt in imposing a sentence:
>
>> (1) the defendant's maintenance of innocence after conviction, (2) the judge's attempt to get the defendant to admit guilt, and (3) the appearance that[,] had the defendant affirmatively admitted guilt, his sentence would not have been so severe. . . . [I]f there is an indication of the three factors, then the sentence was likely to have been improperly influenced by the defendant's persistence in his innocence.  If, however, the record shows that the court did no more than address the factor of remorsefulness as it bore upon defendant's rehabilitation, then the court's reference to a defendant's persistent claim of innocence will not amount to error requiring reversal.

Id. at 323, 82 P.3d at 409 (citation omitted).

Here, Judge Lo testified that during allocution, Karamatsu did not take responsibility because Karamatsu explained what would have happened if he had taken the stand.  Thus, Karamatsu maintained his innocence after conviction.  Judge Lo noted that Karamatsu was a trained deputy prosecutor who handled OVUII cases, was familiar with the field sobriety tests, should have known better, and stated at trial, "I'm sure you've had the opportunity to review your own case.  And yet I see no acceptance of remorse, regret, or accepting responsibility up until today." However, he did not coerce Karamatsu into admitting guilt or expressly warn him that he would consider the admission of guilt, or lack therefore, in determining the sentence.  Id. at 323, 82 P.3d at 409-10.

Nevertheless, Karamatsu's sentence would not have been so severe had he admitted guilt and not proceeded with trial.

The trial judge stated two reasons for imposing the sentence given after trial, *i.e.*, that Karamatsu did not accept responsibility earlier and Karamatsu had not learned from his prior conviction. During sentencing, the trial judge referenced Karamatsu's prior conviction by stating "obviously you didn't learn from that prior experience. You're in law enforcement, or was. You screened cases. You should know better. So now your attorney is asking for no jail. But what you got before didn't correct your behavior." However, the trial judge plainly knew about Karamatsu's prior conviction when he made the sentencing inclination, but nevertheless increased the sentence after trial. Thus, it appears that the increase in the sentence from the sentencing inclination is not solely attributable to the failure to learn from a prior conviction, but also from Karamatsu not taking responsibility earlier by going to trial. Therefore, we conclude that Karamatsu's due process rights and right against self-incrimination were violated. Id. at 324, 82 P.3d at 410.

Relatedly, after Karamatsu was sentenced, Kaneshiro provided ineffective assistance as trial counsel for failing to put the sentencing inclination on the record. "In any claim of ineffective assistance of trial counsel, the burden is upon the defendant to demonstrate that, in light of all the circumstances, counsel's performance was not objectively reasonable -- *i.e.*, within the range of competence demanded of attorneys in criminal cases." Briones v. State, 74 Haw. 442, 462, 848 P.2d 966, 976

(1993) (citation and internal quotation marks omitted). The defendant must show specific errors or omissions reflecting counsel's lack of skill, judgment, or diligence, and that these errors or omissions resulted in either the withdrawal or substantial impairment of a potentially meritorious defense. Id.

It is clear that the difference between the sentencing inclination and the sentence imposed after trial was based upon Karamatsu's decision to proceed with trial. Without placing the sentencing inclination on the record, Karamatsu could not demonstrate his sentence would not have been so severe. Such an error demonstrated a specific error in judgment that substantially impaired a potentially meritorious defense regarding sentencing.

Kaneshiro also provided ineffective assistance as appellate counsel. If an appealable issue is omitted as a result of the performance of counsel whose competence fell below that required of attorneys in criminal cases, then appellant's counsel is constitutionally ineffective. Id. at 467, 848 P.2d at 978. An appealable issue is an error or omission by counsel, judge, or jury resulting in the withdrawal or substantial impairment of a potentially meritorious defense. Id. at 465-66, 848 P.2d at 977. Kaneshiro represented Karamatsu at trial and on appeal. Kaneshiro knew about the sentencing error, knew he failed to put the sentencing inclination on the record, and did not raise the issue on appeal, resulting in a substantial impairment of a

potentially meritorious defense regarding sentencing. Therefore, COL 7 is wrong to the extent it generally concluded Kaneshiro was not ineffective, although it was not wrong due to a failure to raise the bias issue.

Karamatsu also challenges COL 9, in which the District Court concluded that Karamatsu failed to prove the existence of any extraordinary circumstances that justified his failure to raise the claim that Kaneshiro was ineffective for failing to make a record of Judge Lo's comments or to request Judge Lo recuse himself. The FOFs do not provide facts directly related to COL 9. It appears to be based on FOF 2, which found that Kaneshiro was both trial and appellate counsel, and the State's argument that, because Karamatsu knew about the pretrial comments prior to trial and chose not to raise the issue and proceed to trial, Karamatsu waived his right to effective assistance of counsel by retaining Kaneshiro for the appeal.

"It is well settled that the constitutional right to the assistance of counsel in a criminal case is satisfied only when such assistance is effective." Maddox v. State, 141 Hawaiʻi 196, 202, 407 P.3d 152, 158 (2017) (internal brackets, citation and quotation marks omitted). A defendant may waive the right to effective assistance of counsel, but it must be knowingly and intelligently waived. See State v. Richie, 88 Hawaiʻi 19, 42, 960 P.2d 1227, 1250 (1998). However, "[a] waiver is the knowing, intelligent, and voluntary relinquishment of a known right."

State v. Barros, 105 Hawaiʻi 160, 168, 95 P.3d 14, 22 (App. 2004) (citation omitted), cert. denied, 105 Hawaiʻi 196, 95 P.3d 627 (2004). "A waiver is knowing and intelligent when it is made with full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." State v. Domut, 146 Hawaiʻi 183, 193, 457 P.3d 822, 832 (2020). Thus, to determine whether a waiver was voluntary and intelligently undertaken, this court will look to the totality of facts and circumstances of each particular case. Id. (citation omitted). Waiver of the right to counsel will not be presumed from a silent record. State v. Dickson, 4 Haw. App. 614, 619, 673 P.2d 1036, 1041 (1983) (citation omitted). "Where petitioner has been represented by the same counsel both at trial and on direct appeal, no waiver of the issue of trial counsel's performance occurs because no realistic opportunity existed to raise the issue on direct appeal." Briones, 74 Haw. at 459, 848 P.2d at 975.

During closing argument on the Petition, the State argued it was a tactical decision made by Karamatsu and Kaneshiro not to raise the bias issue prior to trial and on appeal. The State contended that they chose to waive the issue of bias before trial and on appeal; therefore, counsel was not ineffective. However, even if Karamatsu waived the bias issue because he knew about the pretrial comments prior to trial, the issue of different sentences between the sentencing inclination and the

sentence after trial did not arise until pronouncement of the sentence. Thus, Karamatsu could not have waived a sentencing issue by proceeding to trial.

The record indicates that Kaneshiro told Karamatsu that he could not raise anything on appeal that had no basis in the record, and since he had not placed the pretrial comments on the record, he could not raise it on appeal. The record does not support a conclusion that Karamatsu knowingly and voluntarily waived his right to effective assistance of appellate counsel simply by retaining the same counsel for the appeal and having discussions about the case. It would be contrary to the presumption in Briones, which states there is no realistic opportunity to raise the issue of ineffective assistance of trial counsel when counsel is both trial and appellate counsel. The record does not indicate that Karamatsu knowingly and voluntarily waived the sentencing issue on appeal because his counsel explained to him that it could not be raised, as opposed to counsel saying that it could be raised, but Karamatsu decided or directed counsel not to raise it with the full awareness of the nature of the issue being abandoned and the consequences of the decision to abandon it. Therefore, COL 9 is wrong to conclude that Karamatsu's claims were waived.

No FOF or COL addressed Karamatsu's claim that Judge Lo violated CJC Rule 2.4(a) when he expressed fear he would face public criticism for being too lenient. However, we decline to

15

address this claim because, even assuming there was a violation of CJC Rule 2.4(a) with respect to sentencing, we have already determined that Karamatsu is entitled to resentencing, as stated above.

For these reasons, the District Court's February 5, 2019 Order Denying Relief is affirmed in part and vacated in part; this case is remanded to the District Court for resentencing.

DATED: Honolulu, Hawaiʻi, March 29, 2021.

On the briefs:

Jonathan Burge,
for Petitioner-Appellant.

Albert Cook,
Deputy Attorney General,
for Respondent-Appellee.

/s/ Lisa M. Ginoza
Chief Judge

/s/ Katherine G. Leonard
Associate Judge

/s/ Karen T. Nakasone
Associate Judge